# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CIV-61282-ZLOCH/ROSENBAUM

ANGELA VIRGO,

      Plaintiff,

vs.

NATIONAL CITY MORTGAGE CO., *et al.*

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO
## FED. R. CIV. P. 12(b)(6) AND INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Shapiro & Fishman, LLP ("Shapiro") and the PNC Bank, N.A. defendants[1] ("PNC") move to dismiss Plaintiff Angela Virgo's ("Plaintiff's") Complaint.

As Plaintiff readily admits, more than two years have passed since PNC, through its counsel Shapiro, secured a final judgment of foreclosure in April 2009 against Plaintiff in a state court proceeding filed in Broward County (the "Foreclosure Action"). (D.E. 1–3, Complaint ("Compl.") ¶¶ 1, 13.) Refusing to concede the loss, Plaintiff attempts to re-litigate that foreclosure by purporting to allege claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("Federal RICO") and its Florida equivalent, Fla.

---

[1] PNC is the successor to the following related defendants (some wrongly or duplicatively described in the Complaint): National City Mortgage Co. and National City Mortgage Co., formerly a subsidiary of National City Bank of Indiana and National City Mortgage Co., formerly a division of National City Bank of Indiana.

Stat. § 895.05 *et seq.* ("Florida RICO"). These claims should be dismissed for at least the following reasons:

*First,* the claims pled by the Complaint constitute an impermissible collateral attack on a final judgment entered in the Foreclosure Action that is barred by the doctrine of *res judicata.*

*Second,* the Court should alternatively dismiss the Complaint under the doctrine of collateral estoppel. The same issue Plaintiff seeks to raise here—whether foreclosure of the property securing her loan was proper—was the very subject of the Foreclosure Action. Collateral estoppel precludes Plaintiff from re-litigating that issue in a second lawsuit.

*Third,* the Complaint fails to properly plead any of the elements of a proper RICO claim under either federal or Florida law. Specifically, the Complaint fails to properly plead facts sufficient to demonstrate the (i) two "predicate acts," (ii) pattern of racketeering activity, (iii) RICO "enterprise," and (iv) injury to Plaintiff's property proximately caused by a "predicate act," each of which is essential to Plaintiff's RICO claims.

*Fourth,* Defendants are entitled to absolute immunity from suit on the claims asserted in the Complaint under Florida's applicable litigation privilege, because the Complaint is based solely on acts that occurred, if at all, during the course of litigating the Foreclosure Action.

## APPLICABLE PLEADING STANDARDS

A motion to dismiss tests the sufficiency of the pleadings. *Brown v. Crawford County,* 960 F.2d 1002, 1010 (11th Cir. 1992). Considering only the allegations contained within the four corners of a complaint, and accepting them as factually correct, the Court should dismiss an action if there is no set of facts entitling the pleader to relief on the theories pled. *Id.* Rule 12(b)(6), Fed. R. Civ. P., authorizes this Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" However, "[c]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."

*Brown, 960 F.2d at 1010* (quoting *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1263 (11th Cir. 2004)) (internal quotation marks omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level; they must state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007).

All complaints must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Likewise, "naked assertion[s]" bereft of "further factual enhancement" will not suffice. *Twombly*, 550 U.S. at 555, 557. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562).

Civil RICO claims must be pled with greater specificity than other claims because, among other things, they are required to satisfy the requirements of Federal Rule of Civil Procedure 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) ("[c]ivil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. *See* Fed. R. Civ. P. 9(b)."). This requirement is "codified in the Local Rules of the United States District Court for the Southern District of Florida. *See* S.D. Fla. L.R. 12.1 [the Civil RICO Case Statement]." *Id.*

## FACTS

The facts in this action are relatively straightforward. As Plaintiff concedes, she obtained a mortgage from PNC on her property located in Sunrise, Florida, in Broward County (Compl., ¶ 9), and Defendants obtained summary judgment on the foreclosure in April 2009. (*Id.*, ¶ 13). No appeal of the judgment having been taken in the Foreclosure Action, it is final. (*Id.*, ¶ 10,

3

13). Although PNC obtained a final judgment more than two years ago, and despite the filing of this lawsuit, Plaintiff continues to engage in concurrent post-judgment collateral attacks on a Foreclosure Action that was supposed to have been concluded long ago.[2]

The Complaint's core allegation of wrongdoing is that an affidavit executed by PNC employee Teresa Clopp, allegedly without personal knowledge of the facts stated accurately therein, was filed in the Foreclosure Action in March 2009. (Compl., ¶¶ 12, 13, 19.) The injury alleged is the loss of Plaintiff's home due to the judgment entered pursuant to the allegedly defective affidavit. (*Id.*, ¶ 36.) Yet there is no claim that Plaintiff was *not* in default when judgment was entered in the Foreclosure Action, or that any of the facts of the mortgage transaction or the default thereunder, as stated in the challenged affidavit, were false in any way.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE OF *RES JUDICATA*.

The Complaint admits that this action is "a collateral action against an alleged Final Judgment" entered in the Foreclosure Action. (Compl, ¶ 1, 10, 13.) This "collateral" action should be dismissed based on the doctrine of *res judicata* because it seeks to relitigate claims and issues that were raised or could have been raised in the underlying Foreclosure Action.

---

[2] Plaintiff cannot have it both ways. In the Foreclosure Action, Plaintiff is currently pursuing the following concurrent attacks: (1) she is appealing an order denying her motion to vacate the April 27, 2009 judgment of foreclosure (likewise filed more than two years after the foreclosure judgment was entered and likewise asserted the same spurious "robo-signing" arguments made here) (Exhibit A); and (2) has just filed a further "Objection To Sale and Issuance of Certificate of Title, Motion To Vacate Final Judgment and Sale for Fraud and Misrepresentation Upon the Court, And Dismiss Case with Prejudice" (Exhibit B). These filings are themselves an abuse of the judicial process and entirely inappropriate given the timing and earlier rejection of these arguments on the merits. They likewise further establish that Plaintiff's Complaint is nothing more than a redressing of the same issues already reviewed and rejected by the state court in the Foreclosure Action.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Henry v. Farmer State Bank*, 808 F.2d 1228, 1232 (7th Cir. 1986). In assessing the preclusive effect of a prior state-court judgment, federal courts afford that judgment the same full faith and credit it would receive in the issuing state's courts. *Henry*, 808 F.2d at 1232; *see also* 28 U.S.C. § 1738. Thus, a defendant in a prior state-court action, such as Plaintiff here, may not recast a defense asserted or available in the state court action in a later action seeking to nullify the effect of the prior judgment.

Similar to the Complaint in this action, the complaint in *Henry* alleged that the defendants had obtained a foreclosure judgment by knowingly filing "false documents and pleadings in the state court foreclosure action." *Henry*, 808 F.2d at 1235. The Seventh Circuit upheld the dismissal of that complaint on *res judicata* grounds because the alleged filing of false documents could have been asserted as a defense in the state-court foreclosure action. *Id.* at 1231, 1235–37; *see also Puff 'N Stuff of Winter Park, Inc. v. Federal Trust Bank, F.S.B.*, 945 F.Supp. 1523 (M.D. Fla. 1996) (holding that *res judicata* barred RICO claims asserting fraudulent conduct that were substantively identical to counterclaims asserted in the underlying state court foreclosure case).

Clearly, each claim and matter pled in the instant Complaint could have been asserted as a claim or defense in the Foreclosure Action. Indeed, the Complaint's basic claim that the acts attributed to Defendants made entry of the challenged Foreclosure Action judgment improper is, at bottom, merely another way of saying that such acts were defenses against entry of that judgment. Through this action, Plaintiff invites this Court to revisit the merits of the state-court decisions using precisely the re-characterization tactic proscribed in *Henry*. The Court should

reject the invitation, give the foreclosure judgment the full faith and credit that the law requires, and dismiss this action.

## II. COLLATERAL ESTOPPEL LIKEWISE BARS THE CLAIMS PLED IN THE COMPLAINT.

The complaint is alternatively barred by the doctrine of collateral estoppel. Collateral estoppel precludes re-litigation of issues or facts that were decided in a prior case. The requirements for collateral estoppel are that: (1) the issue raised in the subject case is identical to the one alleged in the prior case; (2) the issue was actually litigated in the prior case; and (3) determination of the issue was a critical and necessary part of the judgment in that earlier case. *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985) (citation omitted); *see also Community Bank of Homestead v. Torcise*, 162 F.3d 1084 (11th Cir. 1998) (collateral attack on state-court foreclosure judgment held barred by collateral estoppel).

Here, each element of collateral estoppel is present. First, the propriety of the challenged foreclosure was litigated and determined in the Foreclosure Action. Second, Plaintiff had a full and fair opportunity to litigate the propriety of the foreclosure there. Third, determination of the propriety of the foreclosure self-evidently was central to the state-court's judgment of foreclosure. The claims asserted in the Complaint are, therefore, barred by collateral estoppel.

## III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE FACTS SUFFICIENT TO PLEAD A RICO CLAIM.

Even if Plaintiff's claims are not barred by *res judicata* or collateral estoppel, her Complaint otherwise fails to state a claim under federal or Florida RICO, as shown below.

### A. To State A Valid RICO Claim For Damages Based On 18 U.S.C. § 1962(c), The Complaint Must Allege Facts Establishing Each Of The Elements Identified In 18 U.S.C. § 1962(c) And 18 U.S.C. § 1964(c).

The Complaint attempts to plead a RICO claim for remedies provided by 18 U.S.C. § 1964(c) ("§ 1964(c)") premised on a violation 18 U.S.C. § 1962(c) ("§ 1962(c)"). A § 1962(c)

violation requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Ind., Inc.*, 411 F.3d 1252, 1256 (11th Cir. 2005) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Recovery of and standing to recover any § 1964(c) remedy require (1) injury to a claimant's "business or property" and (2) proximate causation of such injury by the § 1962(c) violation. *Id.*

Because Florida's RICO statute is patterned after the federal RICO statute, Florida courts look to federal RICO decisions for guidance in interpreting and applying the Florida RICO statute, and the analysis applied to claims under the Federal RICO act herein is, therefore, equally applicable to claims under Florida's statute. *Jackson v. BellSouth Communications*, 372 F.3d 1250 (11th Cir. 2004); *Florida Software Systems, Inc. v. Columbia HCA Healthcare Corp.*, 46 F. Supp. 2d 1276 (M.D. Fla. 1999).[3]

**B.      The Complaint Should Be Dismissed Because It Fails To Properly Plead The Pattern Of Racketeering Activity Required By 18 U.S.C. § 1962(c).**

1.      The Complaint Fails To Properly Allege Specific Facts Sufficient To Plead Two Or More RICO Predicate Criminal Acts That Can Be Attributed To The Alleged Enterprise.

The "pattern of racketeering activity" essential to a § 1962(c) violation must include an "enterprise" member's commission of two distinct but related criminal offenses ("predicate acts") identified in 18 U.S.C. § 1961(1). *Williams v. Mohawk Industries, Inc.*, 411 F.3d 1252, 1256–57 (11th Cir. 2005). Because, as shown above, RICO complaints must meet Fed. R. Civ. P. 9(b)'s stringent pleading requirements, they "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the

---

[3] In fact, the Complaint does not actually plead a claim for relief under Florida law because, although Count I of the Complaint is *labeled* as a Florida RICO complaint, that Count's sole prayer for relief seeks relief *under 18 U.S.C. §1964.* (Compl. ¶ 32.)

statement; (3) the content and manner in which the statements misled the Plaintiffs; and, (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal,* 482 F.3d at 1317–1318.

The Complaint's attempts to plead the required predicate acts, however, consist entirely of "[c]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts [that] will not prevent dismissal" and are illogical and internally inconsistent. *Jackson,* 372 F.3d at 1263. For example, neither count of the Complaint even mentions any federal or state criminal statute that allegedly was violated. Moreover, while Count I (paragraph 29) makes cursory mention of "mail fraud," most of the "predicate acts" alleged in that paragraph and none of the "overt acts" alleged in Count II even involve use of the mail.

Paragraph 29(a) of the Complaint exemplifies the Complaint's failure to properly plead any RICO predicate act. It asserts as the first "predicate act" of "mail fraud" that Defendant Shapiro's "standard complaint" contained both a "title" that included the words "lost loan document" and an allegation that the plaintiff was the "owner and holder" of the "note and mortgage," and "both cannot be true." (Compl. ¶ 29(a).) At most, however, this allegation asserts that Shapiro engaged in alternative pleading, which is permissible in Florida state courts and could not have defrauded anyone. *See Folta v. Bolton,* 493 So. 2d, 440, 443 (1986).

Similarly, Paragraph 29(d) asserts as a predicate act the preparation and filing of an affidavit of Teresa S. Clopp in the Foreclosure Action, which is inappropriately labeled as "robo-signing" throughout the Complaint. The Complaint, however, does not identify any substantive fact material to the state-court foreclosure claimed as Plaintiff's injury that was stated inaccurately in the Clopp Affidavit.[4] To the contrary, the Complaint alleges only generally, and

---

[4] The Complaint does make several "naked assertions" bereft of "further factual enhancement" (*see Twombly,* 550 U.S. at 562) that the foreclosure was improper because Plaintiff "was given a Loan Modification." (Compl. ¶ 23.) Other parts of the Complaint make clear, however, that there was no such modification in existence when (1) the Foreclosure Action

8

incorrectly, that there was not an adequate *foundation* for Ms. Clopp's affidavit testimony because she (1) was "not an employee of the Defendants," (2) was not authorized to sign the affidavit, and, (3) did not have personal knowledge of the substantive facts accurately stated in her affidavit. (Compl., ¶¶ 12, 19, and 29(d).) Substantially similar allegations represent Count II's only attempt to plead any predicate act. (Compl. ¶ 34.)

The Clopp Affidavit, however, does not state that Ms. Clopp was an employee of any defendant; nor was employee status a component of the foundation required for her testimony. Likewise, it is immaterial whether Ms. Clopp was "authorized" to execute her affidavit, because there is no requirement that a fact witness somehow be authorized by a party to testify in a case, whether by affidavit or otherwise. Finally, the level of Ms. Clopp's knowledge about substantive facts that were stated accurately in her affidavit could not have injured or defrauded anyone, because the substantive facts, regardless of whether a proper foundation was laid for presenting them, justified the foreclosure that the Complaint pleads as Plaintiff's only injury. (Compl. ¶ 31.) In any event, the adequacy of the foundation for and credibility of Ms. Clopp's testimony were required to be addressed and were determined conclusively in Defendants' favor in the Foreclosure Action.[5] See Arguments I and II, *supra.*

---

was filed, (2) the Clopp Affidavit was prepared and filed, or (3) judgment was entered in the Foreclosure Action. Indeed, one of the "predicate act" allegations made in paragraph 29(c) of the Complaint is that, on March 24, 2009, an unidentified Shapiro attorney agreed to a continuance on the basis of the Plaintiff's representation that she "was under review of a Loan Modification" and that the continuance was granted to enable Plaintiff "to continue her efforts to 'modify' the mortgage with the 'lender'." (Compl. ¶ 29(c).) There would, of course, have been no need for a continuance if a loan modification already was in place. The same paragraph of the Complaint goes on to allege that a "Trial Modification was *later* given *in October, 2009*...." (*Id.* (emphasis added).) Thus, even under the Complaint's version of the facts, there was no loan modification in existence in January-April 2009, when the purported predicate acts occurred.

[5] Paragraph 29's other proffered predicate acts are that unidentified Shapiro attorneys (1) filed unidentified foreclosure complaints that were undated and bore illegible attorney signatures (Compl., ¶ 29(b)), (2) entered into continuance agreements with defendants (Compl., ¶ 29(c)) and (3) delayed mailing unidentified documents to unidentified parties (Compl. ¶ 29(e)). These allegations fail to plead fraudulent conduct, let alone do they plead it with the specificity

2.      The Complaint Should Be Dismissed Because It Fails To Properly Allege Facts Sufficient To Show That The Claimed Predicate Acts Are Related And Pose A Threat Of Continued Criminal Activity.

To comply with § 1962(c)'s "pattern of racketeering activity" requirement, a complaint also must allege *facts*, consistent with RICO's stringent pleading requirements, showing that the alleged "racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). Whether this required "continuity" exists depends on (1) the length of time the racketeering activity existed; (2) the number of different schemes involved; (3) the number of predicate acts within each scheme; (4) the variety of species of predicate acts; (5) the distinct types of injury; (6) the number of victims; and, (7) the number of perpetrators. *Columbia Natural Res. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995), *cert denied*, 517 U.S. 1163 (1996).[6]

The Complaint fails to properly allege any *fact* that even addresses, let alone would be sufficient to establish, the continuity requirement necessary to the existence of a pattern of racketeering activity.[7] To the contrary, the Complaint merely argues, in conclusory fashion, that "[t]hese predicate acts satisfy the RICO continuity requirement through today and continue unabated, which meets the definition of 'open-ended' continuity...." (Compl., ¶ 30). Such a

_____

required by Fed. R. Civ. P. 9(b).

[6]      RICO's pattern requirement prevents even actual ordinary commercial fraud (not present here) from serving as the basis of a RICO claim: "If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim. If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989) (citations omitted) (holding that plaintiff's allegations failed to satisfy the continuity prong of RICO's pattern requirement where the defendants' actions were narrowly directed toward a single fraudulent goal and involved a limited purpose).

[7]      To the extent Plaintiff alleges that the alleged "robo-signing" activity has been widely publicized, (Compl, ¶ 14), she cannot succeed on an open-ended continuity argument. *See Jackson*, 372 F.3d 1268-69 (finding that because defendants' fraud was revealed, it was virtually certain that defendants would not engage in similar conduct in the future).

conclusory, unsupported and vague allegation is woefully insufficient to state a pattern of racketeering activity under RICO. *See Ubuy Holdings, Inc. v. Gladstone*, 340 F. Supp. 2d 1343, (S.D. Fla. 2004) (holding that RICO targets *ongoing* criminal activity, not "sporadic" or "isolated" criminal acts).

Indeed, the Complaint contains no factual allegation that addresses any of the seven above-referenced "continuity" criteria, and the few facts it does allege actually tend to disprove the existence of the asserted continuity. For example, regarding the first criterion (*i.e.*, the length of time the claimed racketeering activity allegedly existed), the Complaint shows that the acts alleged to have injured Plaintiff occurred over a period of only about four months—*i.e.* between the January 9, 2009 filing of the complaint in the Foreclosure Action and the April 27, 2009 entry of the foreclosure judgment.[8] (Compl., Exhibit A and ¶ 29(c).) Predicate acts extending over a short period of time simply do not meet the continuity requirement, absent a specific threat of future conduct. *Vemco, Inc. v. Camardella*, 23 F.2d 129, 135 (6th Cir. 1995), *cert denied*, 513 U.S. 1017 (1994) (evidence did not indicate "close-ended continuity", a closed period of repeated conduct over a substantial time period, or 'open-ended continuity' conduct projecting into the future with a threat of repetition" sufficient to satisfy the continuity requirement for a civil RICO claim) (citing *H.J., Inc., supra*).

Because the Complaint fails to properly allege facts constituting predicate acts and demonstrating continuity essential to a "pattern of racketeering activity," it fails to state a claim upon which relief can be granted and should be dismissed.

---

[8] *See Efron v. Embassy Suites (P.R.), Inc.* 283 F.3d 12 (1st Cir. 2000) (finding that the substantial amount of time requirement for a close-ended period could not be met with allegations of 21-month time period).

**C.    The Complaint Should Be Dismissed Due To Plaintiff's Lack of Standing Because Plaintiff Has Not Properly Alleged Any Injury To Business Or Property Proximately Caused By Any RICO Predicate Act.**

The only relief prayed for in each of the Complaint's two counts is an award of damages, attorneys fees and costs pursuant to § 1964(c). In order to sue for such relief under § 1964(c), a plaintiff must allege that he has been directly and proximately "injured in his business or property by reason of a [RICO] violation"—*i.e.*, by at least one RICO predicate act. 18 U.S.C. § 1964(c); *see Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267–268 (1992); *see also Sedima*, 473 U.S. at 496 ("[P]laintiff only has standing if ... he has been injured in his business or property by the conduct constituting the violation.").

To adequately plead injury sustained "by reason of" a RICO violation, as required by § 1964(c), a RICO complaint must make proper factual allegations showing that at least one predicate act was the proximate cause of the claimed injury to Plaintiff's business or property. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) ("In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause ... but the proximate cause as well."). Thus, proximate causation of an injury to business or property by the RICO violation is not only an essential element of Plaintiff's claims, it is also a statutory prerequisite to her standing under RICO.

The Complaint fails to allege facts showing that PNC was not entitled to foreclose on Plaintiff's property or that the judgment of foreclosure was proximately caused by the misrepresentation of any fact material to the foreclosure. The Complaint, therefore, fails to plead an injury proximately caused by a RICO predicate act that is essential to Plaintiff's RICO claims and standing. The Complaint should be dismissed for this reason as well.

12

**D.     The Complaint Should Be Dismissed Because It Fails To Allege Facts Sufficient To Show That Defendants Conducted A RICO Enterprise.**

1.     The Complaint Fails To Allege The Existence Of An Enterprise With The Required Unified Structure And Common Purpose.

To state an actionable claim of a § 1962(c) violation against a defendant, a complaint must properly allege acts by that defendant that constitute the "conduct of an enterprise" which had a "common goal." *Williams*, 411 F.3d at 1257. A RICO enterprise requires, at a minimum, (1) an ongoing organization, formal or informal, (2) whose members function as a continuing unit. *United States v. Turkette*, 452 U.S. 576, 583 (1981). The enterprise must have a "structure" comprised of a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose. *United States v. Boyle*, 556 U.S. __, 129 S.Ct. 2237, 2244 (2009). When a complaint fails to allege *facts* showing these essential components of a RICO enterprise, it fails to state a RICO claim as a matter of law. *See, e.g., Burrell v. State Farm and Cas. Co.*, 226 F. Supp. 2d 427, 443–444 (S.D.N.Y. 2002).

A RICO enterprise must be a group, as distinguished from a single person or entity. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (an enterprise cannot be the same RICO person referred to by a different name). Under RICO, each defendant must be distinct from the alleged enterprise and each defendant must conduct the affairs of the enterprise—*i.e.*, not just the defendant's own affairs—through a pattern of racketeering activity to be liable under RICO. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

For similar reasons, a RICO enterprise cannot consist of an association between a corporation and its subsidiaries and affiliates. *Rivera v. AT&T Corp.*, 141 F. Supp. 2d 719, 725–726 (S.D. Tex. 2001) (plaintiffs' allegations that each of three national corporations was a RICO enterprise held not to meet RICO's strict pleading requirements, because no facts alleged

13

suggested that the companies existed as an entity apart from their business of providing cable services.), *aff'd* 34 Fed. Appx. 962 (5th Cir. 2002); *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (dismissing RICO claim because there was "no evidence that the bank, its holding company, and three employees were associated in any manner apart from the activities of the bank."); *Old Time Enters, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213 (5th Cir. 1989) (holding that when the defendant is a legal entity, the plaintiff must show more than that it, through its agents, committed the predicate acts in the conduct of its business). In *Atkinson*, the alleged predicate racketeering activity was the mailing of false statements requesting payment of interest in excess of the agreed upon amount. *Atkinson, supra.* Because, however, the mailing of loan statements was a normal business activity of the bank, plaintiffs were held to have failed to establish the existence of a valid RICO enterprise. *Id.*

A RICO enterprise also cannot consist of an association between clients and professionals solely involving the retention for and performance of professional services. Initially, "providing standard legal services does not create RICO liability under the operation and management standard." *Bailey v. Trenman Simmons, Kemker, Scharf, Barking, Frye & O'Neill, P.A.*, 938 F.Supp. 825, 827 (S.D. Fla. 1996); *see also In re: Cascade Sec. Litig.*, 840 F. Supp. 1558 (S.D. Fla. 1993) (drafting of false press releases and reckless disregard of a company's financial condition is not enough to create RICO liability on the part of a law firm); *Wiselman v. Oppenheimer*, 835 F. Supp. 1398 (M.D. Fla. 1993) (the rendition of professional services by a financial services company was not equivalent to operation or management).

In *Kattula v. Jade*, 2008 WL 495298 (E.D. Mich. 2008), which involved claims very similar to those pled in Plaintiff's Complaint, the court granted a Rule 12 motion dismissing a RICO claim brought against a group of attorneys alleged to have been part of a RICO enterprise.

Relying on the Supreme Court's holding in *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993),

that conducting or participating in a RICO enterprise means "participat[ing] in the operation or

management of the enterprise itself," the court ruled that a RICO claim against attorneys cannot

be based on allegations amounting to nothing more than that the lawyers provided professional

services to their client:

> Numerous courts have held . . . that attorneys and law firms who provide
> independent professional services do not, without more, participate in the
> operation or management of an alleged RICO enterprise. As this Court recently
> noted, '[m]erely aiding and abetting the affairs of an alleged RICO enterprise by
> approving or pursuing litigation . . . is insufficient to satisfy the requirement that
> [attorneys]' . . . 'operated or managed' the alleged RICO enterprise.

*Kattula*, 2008 WL 495298, at *4 (quotation omitted). *See also Nolte v. Pearson*, 994 F.2d 1311,

1317 (8th Cir. 1993) (affirming directed verdict in favor of attorneys on RICO claims because

"there was no evidence that [they] participated in the [enterprise's] operation or management);

*Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993), which upheld the dismissal of a RICO claim

against an attorney who did nothing more than "prepar[e] two letters, . . . a partnership

agreement, and assist[] in a Chapter 7 proceeding . . . ." *Kattula, supra* at *4.

Finally, to adequately plead the existence of a RICO enterprise, a complaint must "plead

specific facts which establish that the association [between the members of the alleged

enterprise] exists for purposes other than simply to commit the predicate acts." *See Elliott v.*

*Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *see also Acosta v. Campbell*, 2006 WL 146208 (M.D.

Fla. 2006).

The Complaint should be dismissed because it fails to adequately plead even the

existence of a RICO enterprise under the foregoing requirements, let alone the requisite degree

of participation and management of such an enterprise distinct from any defendant's business.

The Complaint fails to allege even one *fact* showing that the claimed enterprise has a "structure"

comprised of a purpose, relationships among those associated with the enterprise, or longevity sufficient to permit the alleged associates to pursue the enterprise's purpose. In addition, the alleged association of related business entities and professionals whom they retained to pursue their normal business purpose cannot be a RICO enterprise. Finally, the Complaint fails to properly allege, as it must, *facts* indicating that the association among defendants it claims to be a RICO enterprise exists for any purpose other than committing the alleged predicate acts. Indeed, the Complaint alleges exactly the opposite of a purpose separate from the commission of predicate act(s). It alleges that the "criminal enterprise was and is (ROBO-SIGNING)"—*i.e.*, the core predicate act claimed which, as shown above, is simply Plaintiff's pejorative mischaracterization.of activities undertaken as part of the normal business activity of foreclosing on a mortgage that was in default.[9] For all of these reasons, the Complaint fails to properly plead the existence of a RICO enterprise essential to Plaintiffs' RICO claims.

        2.      The Complaint Also Fails To Plead Facts Sufficient To Show Each Defendant's Direction Of The Affairs Of The Alleged Enterprise.

To state an actionable claim against a defendant under § 1962(c) and Florida RICO, a complaint must allege facts showing that such defendant participated "in the operation or management of the enterprise itself"—*i.e.*, that the defendant had "some part in directing" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993); *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996). The alleged facts must, in other words, properly show the asserted nexus between the alleged racketeering activity and each defendant's participation in the enterprise's management.

---

[9] *See also*, Compl. 20 ("The practice of 'non-documentation' can be seen as a common thread weaving all of the complained-of conduct into an undeniable tapestry of a criminal enterprise proscribed by RICO").

*Whaley v. Auto Club Ins. Ass'n*, 891 F. Supp. 1237 (E.D. Mich. 1995), *aff'd*, 129 F.3d 1266 (6th Cir. 1997).

The Complaint contains no specific factual allegations of acts, communications, *etc.*, showing the required participation by the respective defendants in *directing* the affairs of the alleged enterprise. Quite the contrary, the Complaint makes only vague and conclusory allegations about (1) Shapiro's independent professional actions as counsel for its clients, including clients other than PNC, and (2) PNC's normal and permissible banking activity of retaining Shapiro to conduct an action seeking a proper foreclosure and providing supporting documents to its attorneys. The Complaint, therefore, fatally fails to make any factual allegations that meet RICO's stringent pleading standards and show that the respective defendants *directed* the alleged enterprise's affairs.

As has been shown, the Complaint fails to properly allege the facts minimally necessary to plead (1) the existence, organization, activities, predicate acts or effects of any RICO enterprise or (2) that each defendant directed the enterprise's affairs.[10] The Court should, therefore, dismiss this action.

---

[10] The Complaint also does not plead any facts sufficient to state an actionable claim that any defendant directed the activities of an enterprise that included John Does. Among other things, it fails to make factual allegations identifying (1) how the John Doe(s) were involved in the alleged enterprise, (2) the time frame in which John Doe(s) were involved, (3) that Defendant(s) and John Doe(s) function as a continuing unit, (4) that the alleged Defendant(s)-John Doe(s) association has a structure, relationships and longevity sufficient to permit its associates to pursue the enterprise's purpose, or (5) that Defendant(s) directed the activities of any such enterprise. Indeed, the Complaint does not even mention any John Doe in any substantive allegation. Therefore, the Complaint does not properly plead either the existence or direction by the respective Defendants of an enterprise comprised of Defendant(s)-John Doe(s).

## IV. THE COMPLAINT SHOULD BE DISMISSED BECAUSE DEFENDANTS HAVE ABSOLUTE IMMUNITY FROM SUIT ON THE CLAIMS ASSERTED IN THIS ACTION UNDER FLORIDA'S LITIGATION PRIVILEGE.

Finally, the claims asserted in the Complaint are barred by Florida's litigation privilege. "Florida's litigation privilege affords **absolute immunity** for acts occurring during the course of judicial proceedings." *Spitalny v. Insurers Unlimited, Inc.*, 2005 WL 1528629 (M.D. Fla. 2005) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (emphasis added)). Florida's litigation privilege applies to state-law claims adjudicated in federal court. *Jackson*, 372 F.3d at 1275. "The privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to and occurring within judicial proceedings." *Id.* (citations omitted). The Florida Supreme Court explained the scope and rationale of the privilege as follows:

> [A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding. The rationale behind immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Moreover, the immunity defense is properly raised by a motion to dismiss. *See, e.g., Spitalny, supra* citing *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. 5th DCA 2004) (additional citation omitted)).

As shown above, each of the "predicate acts" asserted in the Complaint is alleged to have been undertaken in the conduct of judicial foreclosure proceedings in the Florida state court. *See, e.g.*, Compl. ¶¶ 20, 27, 29, and 34. Defendants are, therefore, absolutely immune from suit on claims based on them, requiring dismissal of this action. *See Spitalny, supra.*

## CONCLUSION AND RELIEF REQUESTED

For all of the above reasons, the Complaint fails to state a claim upon which relief can be granted. Defendants therefore respectfully request that this Court enter an Order dismissing the Complaint and awarding Defendants such other relief as the Court deems appropriate.

*Respectfully submitted,*

/s/ Edward J. O'Sheehan
EDWARD J. O'SHEEHAN
Florida Bar No.: 0056790
SHUTTS & BOWEN LLP
200 East Broward Boulevard
PNC Center, Suite 2100
Fort Lauderdale, Florida 33301
Telephone: (954) 524-5505
Facsimile: (954) 888-3071
eosheehan@shutts.com
Counsel for Defendants

Date: July 7, 2011

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendants' Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(B)(6) And Incorporated Memorandum Of Law was served via U.S. Mail this 7th day of July, 2011, upon **Jay L. Farrow, Esquire**, Farrow Law, P.A., 4801 South University Drive, Suite 265, Davie, Florida 33328.

/s/ Edward J. O'Sheehan
EDWARD J. O'SHEEHAN